IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**DONALD E. METHENEY,**

        Plaintiff,

**GROUP MANAGEMENT SERVICES, INC.,**

        Intervening Plaintiff,

        v.                                            **CIVIL ACTION NO. 5:20-CV-54**
                                                                         Judge Bailey

**DEEPWELL ENERGY SERVICES, LLC,** a West Virginia limited liability company, **WILHELM MUNK, TUG HILL OPERATING, LLC,** a West Virginia limited liability company, **CHEVRON APPALACHIA, LLC,** and **APPALACHIAN OILFIELD SERVICES, LLC,**

        Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS

Pending before this Court is Appalachian Oilfield Services' Motion to Dismiss And/Or Motion for Summary Judgment [Doc. 88], filed May 10, 2021. On May 21, 2021, plaintiff filed a response in opposition to the Motion. [Doc. 96]. That response also made a motion in the alternative to strike the Notices of Nonparty fault. On May 28, 2021, Appalachian Oilfield Services ("AOS") filed a reply in support of its motion to dismiss or for summary judgment. [Doc. 97]. Then, on June 4, 2021, defendants Tug Hill Operating, LLC ("Tug Hill") and Deepwell Energy Services, LLC ("Deepwell") each filed a response in opposition to plaintiff's motion to strike. See [Docs. 98 & 99]. Plaintiff then filed a reply in support of its Motion to Strike [Doc. 101] on June 11, 2021. These motions are ripe for decision. For

1

the reasons that follow, this Court will grant the Motion to Dismiss and deny the Motion to Strike.

**BACKGROUND**

This case arises out of an accident that occurred on an oilfield site. According to the Complaint, on January 14, 2018, plaintiff was working atop a water truck operated by defendant Munk, an employee of Tug Hill, when the truck pulled away. [Doc. 78 at ¶¶ 16, 18]. Plaintiff fell and repeatedly struck the vehicle, causing him injuries. [Id. at ¶¶ 18–19]. On December 12, 2019, plaintiff brought suit in the Circuit Court of Wetzel County, West Virginia, bringing claims against defendant Tug Hill, who was responsible for the operation and maintenance of the oilfield site, defendant Deepwell, a subcontractor, an unnamed defendant (later identified as Munk), and the Ohio Bureau of Workers' Compensation. *See* [Doc. 1-1]. At the time of the incident, plaintiff was employed by AOS and had received workers' compensation benefits. On March 18, 2020, the case was removed to this Court on the basis of diversity jurisdiction. On April 9, 2020, Group Management Services, Inc. filed an Intervenor Complaint for subrogation, seeking reimbursement of workers' compensation expenses arising out of plaintiff's injuries. [Doc. 10]. On September 11, 2020, a Second Amended Complaint added Chevron Appalachia, LLC, another subcontractor, as a defendant. *See* [Doc. 44].

After plaintiff's deposition, defendants Deepwell and Tug Hill each filed Notices of Nonparty Fault [Docs. 57 & 62] under West Virginia Code § 55-7-13d, providing notice that AOS was wholly or partially at fault for the damages alleged in this case. As summarized by plaintiff, "[i]n light of that development, and the difficulty that would be presented by having to deal with an 'empty chair' at trial, Plaintiff amended his Complaint again on March

12, 2021, adding AOS as a defendant under the only theories available to him – deliberate intent pursuant to West Virginia Code § 23-4-2, and employer intentional tort, pursuant to Ohio Revised Code § 2745.01." [Doc. 96 at 3].

Thereafter, AOS filed a Motion to Dismiss or for Summary Judgment [Doc. 88], arguing, among other reasons, that the claims against it do not relate back to the original pleadings and are not outside the statute of limitations. Plaintiff filed a response opposing the Motion, but, alternatively, moved to strike the Notices of Nonparty Fault if the Court grants the motion to dismiss or for summary judgment. [Doc. 96].

## **LEGAL STANDARDS**

**Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction. A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment. ***Adams v. Bain***, 697 F.2d 1213, 1219 (4th Cir. 1982); ***Mims v. Kemp***, 516 F.2d 21 (4th Cir. 1975). Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction. No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See* ***Materson v. Stokes***, 166 F.R.D. 368, 371 (E.D. Va. 1996). Whenever it appears by

suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. See Fed. R. Civ. P. 12(h)(3).

**Motion to Dismiss for Failure to State a Claim**

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 570 (2007); see also **Giarratano v. Johnson**, 521 F.3d 298, 302 (4th Cir. 2008) (applying the **Twombly** standard and emphasizing the necessity of *plausibility*). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. **Edwards v. City of Goldsboro**, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. **Anheuser-Busch, Inc. v. Schmoke**, 63 F.3d 1305, 1312 (4th Cir. 1995). In **Twombly**, the Supreme Court, noted that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." **Twombly**, 550 U.S. at 555, 570 (upholding the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible.").

This Court is well aware that "[m]atters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion." **Williams v. Branker**, 462 F. App'x 348, 352

(4th Cir. 2012). "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." **Witthohn v. Fed. Ins. Co.**, 164 F. App'x 395, 396 (4th Cir. 2006). However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint. *Id*. at 396–97.

**Motion for Summary Judgment**

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See* **Matsushita Elec. Indus. Co. v.**

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted). Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## **DISCUSSION**

Defendant AOS argues that the claims against it, added in the Third Amended Complaint, must be dismissed because they do not relate back and are barred by the statute of limitations.

A party may move to amend his complaint pursuant to Rule 15(a), which directs that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Rule 15, however, "'has its limits,' and . . . must be applied especially cautiously when an

amendment that 'drags a new defendant into a case' is proposed." *Locklear v. Bergman & Beving AB*, 457 F.3d 363, 366 (4th Cir. 2006) (quoting *Intown Props. Mgmt., Inc. v. Wheaton Van Lines, Inc.*, 271 F.3d 164, 170 (4th Cir. 2001)).

Here, plaintiff filed his Third Amended Complaint [Doc. 78] on March 12, 2021. Therein, plaintiff added as a defendant AOS, alleging theories for deliberate intent under West Virginia Code § 23-4-2 and employer intentional tort under Ohio Revised Code § 2745.01, both stemming from the January 14, 2018, incident. It is undisputed that the claim against AOS was added well after the expiration of the two-year statute of limitations. Accordingly, this Court must determine whether the claim against AOS relates back to the original pleading, as required by Federal Rule of Civil Procedure 15(c).

When a party seeks leave to amend after expiration of the statute of limitations on a claim, the proposed amendment will be futile unless it relates back to the date of the original pleading. *Locklear*, 457 F.3d at 365. The question whether the amendment relates back to the date of the original pleading is governed by Rule 15(c). Under Rule 15(c), plaintiff must show that: (1) any amended claim arose out of the conduct, transaction or occurrence set forth in the original pleading; (2) any new parties received adequate notice of suit so as not to be prejudiced in maintaining a defense; and (3) any new parties knew that, but for a mistake of identity, they would have been made parties to the original action. Fed. R. Civ. P. 15(c).

Here, plaintiff contends that "there is no question that the claims asserted by the Plaintiff arose out of the same conduct, transaction, or occurrence set out in the original Complaint. Further, there is likewise no question that AOS had notice of the potential claim

7

at issue from the time that the injury occurred, and certainly within the limitations period." [Doc. 96 at 10]. However, even accepting that, this Court finds that plaintiff has not met the requirement of 15(c)(1)(C)(ii), that the party to be brought in, AOS in this case, "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Although AOS may have been on notice of the lawsuit, there is nothing to indicate that the failure to name it as a defendant was due to any mistake concerning the proper party's identity. Without that, the Amended Complaint does not "relate back." *See* Arthur R. Miller, Mary Kay Kane, A. Benjamin Spencer, 6A Federal Practice & Procedure (Wright & Miller) § 1498.3 (3d ed.) ("Relation back will be refused only if the court finds that there is no reason why the party to be added should have understood that it was not named due to a mistake."). "[M]aking a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity." **Krupski v. Costa Crociere S. p. A.**, 560 U.S. 538, 549 (2010); *see also* **Tatum v. RJR Pension Inv. Committee**, 761 F.3d 346, 371–372 (4th Cir. 2014) (Decision to sue committees which were administrator's of 401(k) plan, but not the individual committee members, reflected a deliberate choice). However,

> The reasonableness of the mistake is not itself at issue. As noted, a plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant

8

based on that misimpression. That kind of deliberate but mistaken choice
does not foreclose a finding the Rule 15(c)(1)(C)(ii) has been satisfied.

*Krupski*, at 549.

These requirements of Rule 15(c) reflect a subtle and complex compromise of two competing policies: On the one hand, the Federal Rules favor simplicity in pleadings, *see* Fed.R.Civ.P. 8(a), and their liberal amendment, *see* Fed.R.Civ.P. 15(a); **Foman v. Davis**, 371 U.S. 178, 181 (1962), as well as the administration of cases to secure their just determination, *see* Fed.R.Civ.P. 1. On the other hand, statutes of limitations are legislative determinations that give defendants predictable repose from claims after the passage of a specified time, and courts must, in recognition of the separation of powers, hesitate to extend or ignore them for judicially created reasons. *See* **Lyons P'ship, L.P. v. Morris Costumes, Inc.**, 243 F.3d 789, 797 (4th Cir. 2001).

**Goodman v. Praxair, Inc.**, 494 F.3d 458, 467–68 (4th Cir. 2007).

Plaintiff relies on **Goodman** for the proposition that "[w]hen the party has been given fair notice of a claim *within the limitations period* and will suffer no improper prejudice in defending it, the liberal amendment policies of the Federal Rules favor relation-back." [Doc. 96 at 10], citing **Goodman**, at 471. But **Goodman** dealt with a situation where the plaintiff made a mistake in the proper party's identity:

As the [district] court observed, Goodman "mistakenly thought that [Praxair, Inc.] became the (or perhaps a) successor in interest to [Tracer Research

9

Corporation]. Rule 15(c) does not allow relation back to correct this type of mistake." . . . The interpretation of Rule 15(c) made by the district court and now urged by the Praxair defendants focuses unnecessarily on the type of mistake without addressing the notice and prejudice to the new party.

*Goodman*, at 469.

In contrast, plaintiff in this case chose not to sue AOS, fully aware of AOS's identity and relationship to the plaintiff, and amended the Complaint to include AOS only after two defendants served Notices of Nonparty Fault. Plaintiff did so in light of "the difficulty that would be presented by having to deal with an 'empty chair' at trial." [Doc. 96 at 3]. There is no basis to find that AOS should have understood that it was not named as a defendant in the earlier versions of the Complaint due to a mistake. Indeed, AOS could have reasonably understood that it was not included in earlier versions of the Complaint because it had immunity under the workers compensation statute. Accordingly, the amendment does not "relate back" to the earlier pleadings and AOS should be dismissed from this case.

Next, this Court turns to plaintiff's Motion, included in his response, moving to strike the Notices of Nonparty Fault. This Court finds that the Motion should be denied.

Under W.Va. Code § 55-7-13d, "[i]n assessing percentages of fault, the trier of fact shall consider the fault of all persons who contributed to the alleged damages regardless of whether the person was or could have been named as a party to the suit." W.Va. Code § 55-7-13d(a)(1). If a defendant wishes for the fault of a nonparty to be considered, "[n]otice shall be filed with the court and served upon all parties to the action designating the nonparty and setting forth the nonparty's name and last known address, or the best identification of the nonparty which is possible under the circumstances, together with a

brief statement of the basis for believing such nonparty to be at fault." W.Va. Code § 55-7-13d(a)(2). "In all instances where a nonparty is assessed a percentage of fault, any recovery by a plaintiff shall be reduced in proportion to the percentage of fault chargeable to such nonparty." W.Va. Code § 55-7-13d(a)(3). Finally, the statute indicates that "[n]othing in this section is meant to eliminate or diminish any defenses or immunities, which exist as of the effective date of this section, except as expressly noted herein." W.Va. Code § 55-7-13d(a)(4).

Here, defendants Tug Hill and Deepwell each filed Notices of Nonparty Fault, naming AOS as being potentially at fault for plaintiff's injuries based on plaintiff's deposition testimony indicating that AOS failed to provide him safety training and instructed him to misrepresent that he had received such training. [Docs. 57 & 62]. Plaintiff raises three reasons why he contends this Court must strike the Notices of Nonparty Fault. First, plaintiff contends that because AOS "is at least arguably immune from suit for Mr. Metheney's injuries," it cannot be apportioned fault. [Doc. 96 at 12]. Plaintiff contends that "[t]he plain language of the apportionment of fault statue could not be clearer – a non-party that is immune from suit may not be apportioned fault by a jury under W.Va. Code § 5-7-13d." [Id.] at 11. Second, plaintiff argues that even if the statute allowed the inclusion of AOS, defendants would have to prove deliberate intent on the part of AOS. [Id.] at 12. Finally, plaintiff argues the Notices are untimely; W.Va. Code § 55-7-13d(a)(2) requires defendants file such notices within one hundred eighty days after service of process. [Id. at 18].

Regarding plaintiff's first two arguments, Judge Kleeh analyzed the same in ***Taylor v. Wallace Auto Parts & Servs., Inc.***, No. 2:19-CV-27, 2020 WL 1316730 (N.D. W.Va.

Mar. 19, 2020) (Kleeh, J.).  In *Taylor*, plaintiff, bringing claims on behalf of her deceased husband in regard to a fatal mining accident, brought suit against the manufacturer of a personnel carrier decedent was riding at the time of the accident.  Defendant filed a notice of nonparty fault advising fault on the part of decedent's employer, CRCC.  Plaintiff filed a Motion to Strike, arguing "that because CRCC is granted immunity under the Workers' Compensation Act, it cannot be placed on the verdict form. Plaintiff argues that CRCC remains immune from liability unless (1) it fails to comply with the provisions of the Workers' Compensation Act, or (2) all five elements of deliberate intent are proven pursuant to section 23-4-2(d)(2) of the West Virginia Code.  Plaintiff argues that these requirements are not met, and without these requirements, CRCC's fault cannot be assessed." *Id.*, at *1. The Court found those arguments unpersuasive.  First, Judge Kleeh found that the employer's immunity under the Workers Compensation Act did not preclude attributing fault:

> [t]he language of section 55-7-13d indicates that the Legislature contemplated a set of circumstances where a nonparty might be included on the verdict form despite its immunity via the Workers Compensation Act or another avenue. . . .  Regardless of whether Plaintiff would be able to file suit directly against CRCC, section 55-7-13d provides that CRCC may be placed on the verdict form for purposes of assessing the percentages of fault attributable to the parties for the subject incident here.

*Id.*, at *2. Similarly, the Court rejected plaintiff's argument that defendant would be required to prove deliberate intent in order to attribute fault to the employer:

> The statutory immunity bestowed upon employers in good standing and who have not run afoul of the limited exception created by the deliberate intent statute provides that an employer "is not liable to respond in damages at common law or by statute for the injury or death of any employee. . . ." W. Va. Code § 23-2-6. CRCC is not being hailed to court "to respond in damages at common law or by statute." Instead, Defendant seeks, pursuant to a clear and applicable statute, to have the fault assessed in this case among all persons or parties who may have contributed to the incident made subject of this litigation. Such is Defendant's right under section 55-7-13d. The only entity possibly "liable to respond in damages" in this case is Defendant. Because the only liability (as opposed to assessment of fault) to be established here is the fault of the non-employer Defendant, the elements of deliberate intent need not be alleged for Defendant to avail itself of section 55-7-13d of the West Virginia Code.

*Id.*, at *3. This Court finds no reason to depart from the above analysis in the instant case.

In his reply, plaintiff contends that **Taylor** was "clearly wrong." [Doc. 101 at 1]. Plaintiff argues that if this Court follows **Taylor**, it will create an absurdity–"[f]ollowing the verdict, Mr. Metheney will then have to pay the subrogation lien held by the very party who is assessed fault out of his diminished recovery." [Id. at 2]. Plaintiff argues that the better interpretation of § 55-7-13d is in **Weston v. March-Westin Company, Inc.**, Civil Action No.: 19-C-348 (Cir. Ct. Of Monongalia Co., W.Va.) (Gaujot, J.). There, Judge Gaujot found:

12. The plain language of the Statute is clear – a non-party that is immune from suit may not be apportioned fault by a jury under W.Va. Code § 55-7-13d.

. . .

16. W.Va. Code § 55-7-13d(a)(1) clearly defines the term "fault" as it pertains to apportionment as:

"Fault" means an act or omission of a person, which is a proximate cause of injury or death to another person or persons, damage to property, or economic injury, including, but not limited to, negligence, malpractice, strict product liability, absolute immunity, *liability under section two [§ 23-4-2], article four, chapter twenty-three of this code* or assumption of the risk."

W.Va. Code § 55-7-13b (emphasis added).

17. There are only two ways in which an employer may be found liable under W.Va. Code § 23-4-2: 1) by proving specific intent to kill or injure or 2) by proving deliberate exposure/intent under a statutorily defined five (5) element test. The Legislature could have simply stated that an employer whom is normally immune from suit could be held at fault without any particular burden of proof. However, the Legislature specifically chose language linking "fault" for employers to burdens of proof under W.Va. Code § 23-4-2.

18. "A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." *Meadows v. Wal-Mart Stores*, 207 W.Va. 203, 530 S.E.2d 676 (1999). Further, a statute must not be interpreted in a way that renders entire subsections superfluous. *See e.g.* *Christopher J. v. Ames*, 241 W.Va. 822, 829 (2019).

18. In support of its position to the contrary, the Defendant cites an opinion from the United States District Court for the Northern District of West Virginia – *Taylor v. Wallace Auto Parts & Services, Inc.* 2020 U.S. Dist. LEXIS 47573 (N.D. W.Va. 2020). However, the opinion by the Northern District is not persuasive upon this Court as the *Taylor* court failed to consider the aforementioned rules of statutory construction in its ruling. As such, the *Taylor* court's decision is incongruous with the words and plain meaning of the Statute and this Court must reject the *Taylor* decision as erroneous, or at the very least, unpersuasive.

*Weston v. March-Westin Company, Inc.*, Civil Action No.: 19-C-348 (Cir. Ct. Of Monongalia Co., W.Va.) (Gaujot, J.) at 4–5.

The *Weston* Court found *Taylor* unpersuasive because it failed to consider the language "linking" fault under W.Va. Code § 55-7-13b to liability as defined under W.Va. Code § 23-4-2. This Court believes this misreads the statute. Under the definition of fault:

> "Fault" means an act or omission of a person, which is a proximate cause of injury or death to another person or persons, damage to property, or economic injury, **including, but not limited to**, negligence, malpractice, strict product liability, absolute liability, liability under section two, article four, chapter twenty-three of this code or assumption of the risk.

W.Va. Code § 55-7-13b (emphasis added). Fault under this section may include the definition of liability under § 23-4-2, but it is not identical to it. Indeed, if significance and effect are to be given to every section of the statute, fault and liability must be distinct: "Where fault is assessed against nonparties, findings of such fault do not subject any nonparty to liability." W.Va. Code § 55-7-13d(a)(5). This resolves the problem argued by plaintiff– that the defendants' interpretation renders the immunities referred to in § 55-7-13d surplusage: a nonparty can be attributed fault and still retain their immunity. Thus, this Court finds *Taylor* to be the better analysis.

Further, insofar as plaintiff argues this interpretation will create a "second absurdity" wherein recovery may be reduced by attributing fault to AOS, and then again reduced by virtue of the subrogation lien, the plaintiff's argument goes to the propriety of the lien, which is outside the scope of the instant motion. The solution plaintiff proposes creates its own absurdity: that defendants be liable for their own portion of fault *and* for AOS's portion of fault, at odds with § 55-7-13d. In short, this Court agrees with Tug Hill that "[t]he fact that another party may have a right of subrogation is irrelevant to consideration of a notice of nonparty fault under West Virginia Code § 55-7-13d." [Doc. 99 at 7].

Finally, plaintiff argues that the Notices of Nonparty Fault should be stricken because they are untimely. [Doc. 96 at 18]. West Virginia Code § 55-7-13d(a)(2) contains a timing

requirement: "Fault of a nonparty shall be considered if the plaintiff entered into a settlement agreement with the nonparty or if a defending party gives notice **no later than one hundred eighty days after service of process upon said defendant** that a nonparty was wholly or partially at fault." (emphasis added). It is undisputed that the Notices in this case were filed well outside of the one hundred eighty day window. However, defendants argue that the one hundred eighty day requirement is inapplicable in this Court under the *Erie* doctrine. Under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the substantive law of the forum state and federal procedural law. *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965). Defendants point to two cases in which district courts in the Southern District of West Virginia found that the timing requirement was procedural and did not apply. First, in *Estate of Burns ex rel. Vance v. Cohen*, the Court denied a motion to dismiss a notice of nonparty fault, finding that:

> In this case, the timing requirement imposed by the state statute, W. Va. Code § 55-7-13d, is procedural, not substantive, and therefore does not have to be given effect in federal courts. . . . Similarly, federal courts have held that timing is exactly the type of procedural matter to be governed by federal rules.

No. 5:18-CV-00888, 2019 WL 4463318, at *4 (S.D. W.Va. Sept. 17, 2019) (Berger, J.) (citations omitted). Likewise, in *Courtland Co., Inc. v. Union Carbide Corp.*, the Court found that Federal Rules of Civil Procedure 12 and 15, governing the service of responsive pleadings, "control the issue and leave no room for the operation of § 55-7-13d(a)(2)'s 180-day time period." No. 2:18-CV-01230, 2020 WL 7234281, at *6 (S.D. W.Va. Dec. 8, 2020)

17

(Copenhaver, J.). This Court agrees. Accordingly, this Court will deny the Motion to Strike Notices of Nonparty Fault.

## CONCLUSION

Upon consideration of the above, Appalachian Oilfield Services' Motion to Dismiss And/Or Motion for Summary Judgment [**Doc. 88**] is hereby **GRANTED**. Accordingly, plaintiff's Third Amended Complaint [**Doc. 78**] is hereby **DISMISSED WITH PREJUDICE** as to defendant Appalachian Oilfield Services, LLC. Further, plaintiff's Motion to Strike Notices of Nonparty Fault [**Doc. 96**] is hereby **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit a copy of this Order to all counsel of record herein.

**DATED**: June 29, 2021.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE